# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                     Case No. 07-CR-4

**ELENA SCOTT**
        **Defendant.**

## SENTENCING MEMORANDUM

In 1990, defendant Elena Scott began dating a man named Phillip Toliver, and the two had a child together in 1992. Toliver physically abused defendant, and she attempted to end the relationship. Toliver's violence escalated with her attempts, culminating in his kidnaping and assaulting defendant in 1999. Toliver was sent to prison, but when he got out in 2004, he began menacing defendant again. In response, defendant bought two guns, one for herself, and one for her new boyfriend, Jesse Sanders, who had previously tried to help her with Toliver. However, as defendant knew, Sanders, a felon, could not lawfully possess firearms. After police arrested Sanders on drug trafficking charges, he told police that defendant provided the gun found on his person, and the government charged her with making a straw purchase under 18 U.S.C. § 922(a)(6).[1]

Defendant pleaded guilty to the charge, and the probation office prepared a pre-sentence report ("PSR"). The PSR set defendant's base offense level at 12 under U.S.S.G. § 2K2.1(a)(7), but then recommended an enhancement to level 18 under § 2K2.1(b)(6) based

---

[1]Section 922(a)(6) proscribes false statements to federally licensed gun dealers. In this case, defendant falsely stated that she was the true purchaser of the second gun she gave to Sanders.

on the allegation that defendant transferred the gun to Sanders with reason to believe he would use or possess it in connection with his drug trafficking activities. Following a 3 level reduction for acceptance of responsibility, § 3E1.1, and coupled with her criminal history category of I, the PSR recommended an imprisonment range of 18-24 months under the advisory sentencing guidelines.

Defendant opposed the § 2K2.1(b)(6) enhancement, and although the issue was close, I declined to impose it. I then sentenced defendant to three years probation with six months of home confinement on electronic monitoring. In this memorandum, I set forth the bases for these decisions.

## I. SENTENCING PROCEDURE

In imposing sentence, I generally follow a two-step procedure. First, I calculate the advisory sentencing guideline range, resolving any disputes necessary to that determination. Then, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

## II. GUIDELINE DETERMINATION

Under U.S.S.G. § 2K2.1(b)(6), the court must increase the offense level by 4, or to level 18 if the resulting level is less than 18, if "the defendant . . . transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." The government bears the burden of proving by a preponderance of the evidence that the § 2K2.1(b)(6) enhancement applies. United States v. Wagner, 467 F.3d 1085, 1089 (7th Cir. 2006). In the case of a transfer, this requires the

government to prove: (1) that the defendant knew, intended or had "reason to believe" (2) that the person to whom she transferred the gun would use or possess it "in connection with" another felony.

No one alleged that defendant gave the gun to Sanders for the purpose of facilitating his drug trafficking activities. Instead, the government argued that, given his well-known status as a dealer, defendant had "reason to believe" that Sanders would use the gun in connection with his trafficking.

The Seventh Circuit has assumed that the phrase "'reason to believe' is something of which the defendant is conscious, rather than, as in the tort law of negligence, something of which a reasonable person would be conscious whether or not this person, who may have a defective understanding, is conscious of it." United States v. Gilmore, 60 F.3d 393, 394 (7th Cir. 1995). However, the government need not prove that the defendant had reason to believe that the gun would be used in a specific felony offense, see United States v. Inglese, 282 F.3d 528, 539 (7th Cir. 2002) (citing United States v. Jemison, 237 F.3d 911, 918 (7th Cir. 2001)), or that the defendant harbored any notion as to precisely how or when the gun would be used in connection with the other felony offense, see United States v. Messino, 55 F.3d 1241, 1256 (7th Cir. 1995).

The phrase "in connection with" means that the firearm "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A). In other words, "the court must find that the gun had some purpose or effect in relation to that second crime." United States v. LePage, 477 F.3d 485, 489 (7th Cir. 2007). "Mere contemporaneous possession while another felony is being committed is not necessarily sufficient[.]" Id. However, application note 14 further explains that the enhancement applies "in the case of a

3

drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1 cmt. n.14(B). In such cases, the Commission assumes that "the presence of the firearm has the potential of facilitating another felony offense." Id.

In the present case, defendant stated that the firearm purchase and transfer at issue arose out of her attempt to end her abusive relationship with Toliver. She stated that in 1999 she and Sanders met with Toliver in an attempt to end the relationship. However, Toliver ended up assaulting and abducting defendant, and she jumped out of a moving car in order to escape from him, suffering serious injuries. Sanders, who was following, picked her up and took her to the hospital. The state charged Toliver with battery and recklessly endangering safety, and defendant testified against him at trial. Toliver threatened her during the trial, and the judge summoned additional deputies to subdue him. A jury convicted Toliver, and the state court sentenced to him three years in prison. Upon his release in 2004, Toliver moved into a halfway house right across the street from defendant's new residence and resumed his threats. Defendant stated that, as a result, in October 2004 she purchased two handguns, one for herself and one for Sanders. She indicated that Sanders was also concerned for his safety because he had attempted to intervene and help defendant escape Toliver. Defendant admitted that she knew Sanders was a felon and could not have a gun, but claimed that she provided the weapon to him solely for protection purposes.

The government countered that defendant well knew of Sanders's activities, as he used her residence to store drug trafficking materials. Further, witnesses indicated that Sanders carried a firearm during his drug trafficking activities. As noted, officers found on Sanders's person the firearm defendant bought for him when he was arrested. Another judge of this

4

district sentenced Sanders to 168 months in prison for conspiracy to distribute cocaine.

Although a close call, under all the circumstances, I found that the government did not meet its burden. Defendant's fear of Toliver was legitimate given his past conduct, and I found persuasive defendant's contention that she bought the guns for protection from him. Records revealed that she obtained the guns shortly after Toliver's release, which supported her contention. Further, because Sanders was directly involved in her struggles with Toliver, defendant could reasonably believe that he too was in danger.

Even if, as seemed likely, defendant knew or should have known about Sanders's drug activities (past and present), I found this insufficient.[2] Standing alone, a defendant's knowledge that the transferee also happens to deal drugs would not necessarily lead to a belief that the gun would be used to facilitate drug trafficking. Cf. LePage, 477 F.3d at 489 (stating that mere contemporaneous possession of a gun while a felony is committed is insufficient). Moreover, in the present case, both the transferee and transferor had a legitimate reason for acquiring firearms – fear of reprisal from a violent and dangerous individual. The government presented no evidence that Sanders asked defendant to acquire the gun to aid his drug trafficking, or that he otherwise gave her any indication that he planned to use the gun in furtherance of those activities.[3]

---

[2]Officers found packaging materials, a scale, small amounts of narcotics and other accouterments of the drug trade in defendant's house, about which defendant was less than forthcoming. However, Sanders admitted that he was responsible for those materials, and there was no evidence that defendant was personally involved in Sanders's drug trafficking.

[3]Upon his arrest, Sanders promptly identified defendant as the supplier of his gun, but he said nothing further as to the purpose of the transfer. I leave open the possibility that Sanders traded on defendant's legitimate fear to induce her to get him another gun. However, the issue under § 2K2.1(b)(6) is defendant's belief, not Sanders's unexpressed intentions.

5

Although § 2K2.1(b)(6) focuses on the defendant's mental state at the time of the transfer, I further noted that the gun at issue was found on Sanders's person, not with or near any drugs or drug paraphernalia in defendant's house. Officers arrested Sanders with the gun in a house located on Sixth Street, and the government presented no evidence of drugs or drug trafficking materials in that house.[4] Nor did the government offer any evidence that the gun witnesses saw Sanders carry during his drug activities was the same gun defendant provided to him. In sum, there was no evidence specifically connecting this gun to those activities.

Ultimately, while courts have recognized the general link between guns and drug trafficking, see, e.g., United States v. Strong, 485 F.3d 985, 990 (7th Cir. 2007) (noting that guns are tools of the drug trade), such generalities cannot take the place of proof in making determinations of such significance. In the present case, the government presented no specific evidence that defendant knew, intended or had reason to believe that Sanders would use this particular gun to facilitate his drug activities rather than for protection from Toliver. Even under an objective rather than subjective standard, I could not conclude that a reasonable person in defendant's shoes would have had reason to believe that Sanders would use the gun to facilitate his drug activities rather than the purpose for which defendant obtained the gun.

Therefore, I declined to apply § 2K2.1(b)(6) and instead adopted a base offense level of 12. Following a 2 level reduction for acceptance of responsibility, I adopted a final level of 10, producing an imprisonment range of 6-12 months.

---

[4]The PSR indicated that Sanders lived in the Sixth Street house but kept his drugs elsewhere.

6

## III. IMPOSITION OF SENTENCE

**A. Section 3553(a) Factors**

"When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a)." United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007). Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id.

7

Case 2:07-cr-00004-LA   Filed 08/13/07   Page 7 of 10   Document 13

**B.     Analysis**

**1.     Nature of Offense**

As the government noted, straw purchases are very serious offenses. They defeat society's attempts to keep firearms out of the hands of those who should not have them, leading to increased gun violence. The AUSA also indicated that the scenario presented in this case – a woman with no record buying a gun for her felon-boyfriend – represented a growing problem for law enforcement. Defendant's particular crime was mitigated somewhat, however, by her motive in acquiring the firearms, as discussed above. At sentencing, defendant expressed genuine remorse for her actions, stating that she just wanted to be safe from Toliver.

**2.     Defendant's Character**

Aside from this offense, defendant behaved in a pro-social manner. Thirty-five years old, she had just one prior contact with the criminal justice system – a theft case from when she was eighteen. Despite a difficult childhood with an abusive and alcoholic father, she graduated high school and took additional courses at MATC. She then worked as a bus driver from 1992 to 1997, and as an educational assistant at Milwaukee Public Schools ("MPS") from 1997 to the present. However, MPS suspended her during the pendency of this case, and her future there was uncertain. Nevertheless, defendant sought to further her education, studying business at Upper Iowa University, where she expected to earn her degree shortly. Defendant was fluent in French and held a state license for special education.

Defendant's son from her relationship with Toliver, now a teen, moved in with her parents until this matter concluded. The boy's grandparents indicated that defendant raised

8

him well, as he was a respectful and well-rounded young man.

Of some concern was defendant's use of marijuana prior to her arrest. However, after some initial positives all of her screens on pre-trial release were negative. I saw no other correctional treatment needs. Obviously, her choice in men had not been the best.

### 3. Guidelines and Purposes of Sentencing

The guidelines recommended a prison term of 6-12 months, a range falling in Zone B of the grid and allowing a sentence of probation with home or community confinement as a substitute for imprisonment. See U.S.S.G. § 5C1.1(c)(3). Under all of the circumstances, I found such a sentence sufficient but not greater than necessary.

Although defendant committed a serious crime, the mitigating factors were such that confinement in prison was not needed to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A). Defendant also suffered significant collateral consequences in the probable loss of her MPS job, which added to the punitiveness of her conviction. Nor did I find prison necessary to deter defendant from re-offending, given her lack of record, genuine expression of remorse and other positive traits. See § 3553(a)(2)(B). Further, as a convicted felon herself, defendant would now be barred from purchasing firearms. As the government noted, general deterrence is an issue in these types of cases, but under the circumstances I concluded that the prospect of a federal felony conviction, lengthy supervision and confinement in the community was sufficient to deter others similarly situated. Finally, given her lack of record and pro-social lifestyle, I did not believe confinement in prison was necessary to protect the public. See § 3553(a)(2)(C). This was certainly an ill-advised act in passing the gun to Sanders, but I did not see any evidence that under normal circumstances and free from the influence of

9

disreputable men defendant posed any risk.[5]

## IV. CONCLUSION

Therefore, I placed defendant on probation for a period of three years. As conditions, I ordered her to serve 180 days of home confinement on electronic monitoring and participate in drug testing and treatment. Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 11th day of August, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[5] I noted that I would impose the same sentence, even if defendant had reason to believe that Sanders might also use the gun in connection with his dealing. I accepted her contention that facilitating his dealing was not her intent in acquiring the gun, and post-Booker I can give greater effect to motive and circumstance.

10